NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
MARLA SANTIAGO TROCHE,              :
                                    :
            Plaintiff,              :    Civil No. 07-780 (RBK)
                                    :
      v.                            :    **OPINION**
                                    :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
                                    :
            Defendant.              :
_____:

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff Marla Santiago Troche ("Troche" or "Claimant"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits. For the reasons set forth below, the Court affirms the ALJ's decision.

**I.    BACKGROUND**

Claimant Marta Santiago Troche was born on July 19, 1962 in Puerto Rico. She has an eight-grade education and limited proficiency in the English language. The record is unclear on whether she is literate in Spanish and clear that she is illiterate in English. The record is also unclear on when Claimant came to the United States, though there is some evidence that this

1

occurred when she was nineteen years old. (R. at 133.) Claimant is divorced, with two children ages twenty-four and twenty-five. (R. at 133.) Claimant suffers from diabetes and from depression. (R. at 132.) The record is not clear as to whether Claimant has suffered from diabetes since birth or whether she acquired the disease as an adult.

In her application for SSI benefits, Claimant indicated that she suffers from headaches that affect her all day long; she believes these headaches are caused by her depression. (R. at 84.) She also noted that she cannot do any strength lifting or reaching. (R. at 84.) She additionally indicated that she has bladder problems. (R. at 84.) She wrote that her pain is so bad it prevents her from doing any activity. (R. at 86.) At the time of her application, she was taking a blood pressure medication as well as some medications to help combat her depression. (R. at 85, 87.) She also reported general mental health problems related to her nerves and physical pain caused by arthritis in her feet. (R. at 107.)

Claimant lives alone. She has a drivers license but reports not driving because of her nerves. (R. at 94, 256.) Claimant's niece and friends assist her with shopping, household chores, cooking, and paying bills. (R. at 93-94.) Without their help, Claimant said that she would forget to take her medications and would not do household chores such as washing clothes. (R. at 93.) She wrote in her application for benefits that her daily activities consist of waking up, eating breakfast, getting dressed, watching television, taking a bath, taking her medicine, and sleeping. (R. at 91.) She said she doesn't go out except for therapy and doctors appointments, but she noted that she does go shopping for groceries and personal items sometimes with the help of others. (R. at 94.)

Claimant is not currently working, and has not worked in some time. The only job-

related evidence in the record is from work Claimant did a long time ago packing iced tea bottles at a factory. (R. at 259.)

Dr. P. Sholevar of the Nueva Vida of New Jersey Behavioral Health Center first met with Claimant on June 3, 2004. This was apparently Claimant's first attempt at treatment for mental health issues. (R. at 132.) At this initial evaluation, he noted that she reported being depressed and crying at lot. She indicated that she came to the Center because of her nerves. Dr. Sholevar determined that she was not suicidal and had major depressive disorder. He determined that she had a Global Assessment of Functioning ("GAF") score of 35. (R. at 157-58.) Such a score, according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), means that the individual has some impairment in reality testing or communications or major impairment in several areas, such as work, school, family relations, judgment, thinking, or mood. (R. at 28.)

Dr. David Bogacki, conducting a mental status examination of Claimant on October 12, 2004, at the request of the New Jersey Division of Disability Determination Services, noted that Claimant required no assistance for self-care tasks but received assistance from her niece for household chores. He noted that Claimant has friends and can relate to others. He additionally reported that cognitive screening showed impaired abstraction, with poor judgment and insight. He concluded that her money management skills were insufficient and her estimated level of intellectual functioning was in the borderline range. (R. at 132-34.)

Claimant was treated at CamCare Health Corporation what appears to be several times during 2004. Tests during these visits revealed clear lungs, normal heart and pulmonary vasculature, and normal spinal features. (R. at 165-67.) Claimant was hospitalized in September

2005 for nine days for hepatitis.  (R. at 184-85, 260.)

      Medical consultants from the State agency evaluated Claimant and reviewed her past medical records on December 8, 2004, and they concluded that Claimant could take care of herself independently, concentrate, maintain persistence and pace, understand and carry out simple instructions, respond to criticism, and adapt to change.  (R. at 138.)  These consultants also expressed doubts as to Claimant's earlier diagnoses, including major depressive disorder, noting that one of the doctors reporting depression had observed no signs of a mood disorder.  (R. at 138.)

      Claimant applied for SSI on August 19, 2004, alleging an inability to work beginning on May 2, 2004.  Her application was denied initially on January 6, 2005 and upon reconsideration on April 21, 2005.  Claimant requested a hearing, which was held before Administrative Law Judge Daniel N. Shellhammer ("ALJ Shellhammer") on June 1, 2006.  At the hearing, Claimant testified as to her physical and mental limitations.  She testified that the arthritis in her feet and legs causes pain when she walks up stairs and on a flat surface depending on the distance.  (R. at 255-56.)  She testified about her abdominal pain and headaches.  (R. at 260-63.)  She also testified about the tasks her niece and friends help her with and her inability to do things on her own, emphasizing her depression.  (R. at 257-58, 263-65.)  Vocational expert Matthew G. Triehart also testified at the hearing.

      ALJ Shellhammer issued his decision on July 31, 2006.  After appealing within the agency, Claimant filed this appeal on March 2, 2007 challenging the ALJ's decision.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has

given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

## III.   DISCUSSION

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the

Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)).

Applying this five-step analysis, ALJ Shellhammer first found that Claimant had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ concluded that Claimant's diabetes and depression were severe impairments. He additionally concluded that Claimant's alleged hypertension, arthritis, fibroids, and hepatitis were not severe. ALJ Shellhammer concluded at the third step that though Claimant's diabetes and depression were severe, they did not meet the requirements for a listed impairment, referencing Listing 9.08 and 12.04. ALJ Shellhammer, in calculating Claimant's RFC at step four, concluded that Claimant could perform light work with some noted limitations. Specifically, he concluded that claimant can lift/carry ten pounds frequently and twenty pounds occasionally; can walk, stand, or sit for six hours in an eight hour workday; and can perform tasks that involves simple one-two instructions within well-set defined routines and minimal occupational changes. (R. at 33.) Finally, at step five, ALJ Shellhammer relied on the testimony of vocational expert Matthew Treihart, who testified at the hearing, to conclude that Claimant could perform bench work/assembler jobs, which exist in significant numbers in the national economy. (R. at 32.)

Claimant first assigns error to the ALJ's determination that there was not sufficient objective medical evidence to establish that Claimant's hypertension, arthritis, fibroids, and hepatitis caused a significant vocational impact. Claimant additionally argues that the ALJ erred in determining Claimant's residual functional capacity and did not properly explain the reasoning leading to his conclusion that Plaintiff could perform light work as a bench worker/assembler. Finally, Claimant argues that the ALJ did not give proper weight to the opinion of treating

7

physicians, especially the opinion of Dr. P. Sholevar from the Nueva Vida Behavioral Health Center regarding Claimant's mental impairments.

### A. Other Impairments

Claimant contends that ALJ Shellhammer did not properly evaluate the evidence of her other impairments and so his conclusion that these impairments were not severe was error. The Court finds that the ALJ's determination on this issue is supported by substantial evidence.

ALJ Shellhammer discussed the medical evidence of Claimant's blood pressure in determinating that hypertension did not represent a severe impairment to work activities. He referred to Claimant's records from Camcare Health Corporation showing that her blood pressure was within normal limits. (R. at 159-183.) Other references to hypertension in the medical records seem to be from Claimant's own representations to treating physicians that she suffers from hypertension; this subjective evidence is insufficient to establish the existence and severity of an impairment. A claimant's subjective complaints must be considered but will not themselves constitute disability in the absence of objective medical evidence.

The ALJ considered the medical evidence of Claimant's other alleged impairments as well. (R. at 22.) He discussed the reports from Claimant's treatment at Underwood-Memorial Hospital and noted treating physician's conclusion that there was "no evidence for acute intra-abdominal pathology." (R. at 22, 186.) He noted that Claimant was treated for viral hepatitis and that no evidence supports a finding that this illness caused functional limitations. There is some evidence in the record that Claimant suffered a prolapsed uterus in 1995 and some clips were inserted to solve the problem. (R. at 123.) Claimant attributed some abdominal pain to these clips in her application for benefits. (R. at 84.) However, the record is devoid of objective

medical evidence that these clips or other impairments are likely to cause the abdominal symptoms Claimant complains of.  A claimant "must show that he has a condition which reasonably could be expected to produce the alleged symptoms that are the cause of his inability to work."  <u>Williams</u>, 970 F.2d at 1186.  (R. at 123.)

Claimant also asserts that ALJ Shellhammer improperly disregarded her testimony at the hearing regarding her impairments.  (Pl.'s Br. at 11.)  However, the ALJ detailed Claimant's testimony at the hearing and other forms she filled out as part of her application for benefits.  (R. at 24-25.)  He concluded that "diagnostic studies clearly demonstrate that the alleged impairments are not as severe as alleged by the claimant, nor do they record physiologic abnormalities of a kind and level which would support the claimant's complaints."  (R. at 22.)  Subjective complaints alone are not sufficient to establish impairment; "there must be medical signs and laboratory findings which show [the presence of] a medical impairment[ ] which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  As discussed above, the ALJ did discuss the medical evidence in conjunction with Claimant's testimony, and determined that her testimony was inconsistent with the medical evidence.

Contrary to Claimant's assertions, the ALJ did properly evaluate the medical evidence.  His conclusion that Claimant does not have medically determinable impairments affecting her ability to perform basic work activities based on her alleged hypertension, arthritis, fibroids, and hepatitis was based on substantial evidence and will be affirmed.

    **B.**    **RFC Determination**

Claimant argues that the ALJ made several errors in calculating her RFC.  First, she

contends that the RFC calculation is flawed because it does not include consideration of her other limitations, such as hypertension, arthritis, fibroids, and viral hepatitis. Claimant is correct that "the ALJ must consider the combined effect of multiple impairments, regardless of their severity." Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); 20 C.F.R. § 404.1523. However, in order for the ALJ to find that the other impairments impacted her RFC, there must be evidence that these conditions actually imposed some limitation on her. Hartranft, 181 F.3d 359. The burden of providing such evidence rests on the claimant. 20 C.F.R. § 404.1545 (a)(3).

Here, there is no evidence that Claimant's hypertension, arthritis, or fibroids imposed any limitation. The ALJ also noted that though Claimant testified that she had back pain which prevented her from working, the medical record did not contain any evidence of such an impairment. (R. at 29.) He also noted that Claimant's testimony about her headaches was internally inconsistent, as she indicated at one point that her headaches begin and stop throughout the day and at another point that they continue all day long. (R. at 30.) ALJ Shellhammer did not err in considering Claimant's other impairments to the extent they were supported by the medical evidence.

Claimant argues that ALJ Shellhammer erred in calculating her RFC because he did not properly conduct a function-by-function assessment of her abilities, as required by Social Security Ruling 96-8p. This function-by-function assessment includes an evaluation of a claimant's physical abilities, mental abilities, and other abilities that might be affected by a claimant's specific impairments. 20 C.F.R. § 416.945.

However, ALJ Shellhammer did conduct such a function-by-function analysis. He

**10**

discussed her physical impairments, as reported by Claimant in her testimony and by the reports of various doctors. (R. at 24-26.) The ALJ also evaluated the evidence of Claimant's mental limitations. (R. at 26-27.) He specifically concluded that Claimant "demonstrates a mild degree of limitation in the activities of daily living and social functioning; a moderate degree of limitation in the concentration, persistence and pace area of functioning; and has no episodes of [decompensation]." (R. at 27.) The record shows that the ALJ carefully evaluated all the evidence and in fact specified "significant additional limitations" affecting her RFC based largely on her non-exertional limitations. (R. at 25.) The ALJ satisfactorily considered Claimant's functional limitations.

  Claimant additionally contends that the ALJ erred in not providing "any comparison between the actual functions required by the diminished range of light work and the functions that a bench worker/assembler must perform." (Pl.'s Br. at 18.) This argument conflates the obligations of the ALJ at step three with the role of the vocational expert at step five. In calculating a claimant's RFC, the ALJ does not need to evaluate potential work the claimant can do, but rather must determine the maximum work capabilities of the claimant. 20 C.F.R. § 416.945(a)(5). Then where, as here, the claimant has both exertional and non-exertional limitations, the ALJ consults the Directory of Occupational Titles and a vocational expert to determine if there are jobs in significant numbers in the national economy the claimant is capable of performing. See Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000).

  The ALJ acted properly in analyzing Claimant's functional physical and mental abilities, evaluating her subjective complaints of disability, comparing those complaints with the medical evidence, and determining her residual functional capacity to work. The RFC determination is

supported by substantial evidence.

### C. Opinions of Treating Physicians

Claimant argues that ALJ Shellhammer erred in calculating the effect of her non-exertional limitations. Specifically, she argues that the ALJ failed to appropriately weigh the opinions of Dr. P. Sholevar from the Nueva Vida Behavioral Health Center and the State Agency medical consultants.

The ALJ did not disregard all of the opinions of Dr. Sholevar but rather specifically rejected Dr. Sholevar's assessment of Claimant's GAF at 35. To support this decision, the ALJ noted that Dr. Sholevar did not relate his opinion to any specific findings and did not explain how the score fit with the other observations he made about Claimant's fair prognosis and non-suicidal outlook. (R. at 28.) Dr. Sholevar opined that Claimant had a GAF of 35 at their initial meeting. (R. at 158.) At subsequent meetings, he noted that Claimant was still depressed, but stable. These subsequent meetings occurred on August 5, 2004, November 15, 2004, February 3, 2005, August 22, 2005, and November 28, 2005. (R. at 156-57, 210-11.) There are no other detailed assessments from Dr. Sholevar. The Court notes that this assessment appears to have been made the first time Dr. Sholevar met with Claimant and no attempt to evaluate her progress after treatment appears in the record.

An ALJ is only required to give controlling weight to the opinion of a treating physician regarding the severity of an impairment when that opinion is found to be well-supported by medically-acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

In reaching his conclusion, the ALJ noted that Dr. Sholevar's GAF determination was not

**12**

supported by the rest of the doctor's observations about Claimant's mental state. He properly compared the GAF score with the evaluations of other treating physicians and the rest of the medical evidence. The ALJ discussed Dr. Bognacki's findings that Claimant had poor judgment and insight but a good prognosis with continued treatment. (R. at 27.) He discussed the findings of the State agency psychologists that Claimant had moderate limitations in her ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods of time, to perform at a consistent pace without an unreasonable number and length of rest periods, and to make plans independently of others. (R. at 27.) ALJ Shellhammer also discussed the State Agency psychologist findings that Claimant was not significantly limited in her ability to remember locations and work-like procedures, to understand and carry out short and simply instructions, to accept instructions and respond appropriately to criticism, and to get along with co-workers. (R. at 27.) After taking all these opinions as well as the Claimant's testimony into consideration, the ALJ concluded that Claimant demonstrated a mild degree of limitation in the activities of daily living and social functioning and a moderate degree of limitation in the areas of concentration, persistence, and pace of functioning. (R. at 27.) These conclusions are reflected in the ALJ's ultimate RFC determination, which grafted additional requirements onto the standard demands on light work based on Claimant's mental impairments. ALJ Shellhammer did not reject the GAF score on the basis of "credibility judgments, speculation, or lay opinion." Morales, 225 F.3d at 317-318. Instead, it was based on an analysis of Dr. Sholevar's entire report and the rest of the medical evidence about Claimant's mental limitations. The ALJ's rejection of the GAF score was supported by substantial evidence and is affirmed.

The Court disagrees with Claimant's contention that the findings of the state agency psychologists as expressed in the "Summary Conclusions" form with boxes to check off for various limitations were the "appropriate limitations" to pose in a hypothetical question to the vocational expert. (Pl.'s Br. at 24.) Form reports requiring doctors to check a box are given less weight than thorough written reports. Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). The hypothetical questions Claimant's attorney posed to the vocational expert, which Claimant now argues represented the "appropriate limitations" for consideration were based entirely on Claimant's interpretation of one such form.[1] (R. at 277-83.) The ALJ's hypothetical was more nuanced, and asked the vocational expert whether jobs existed for a person "restricted to performing only simple one or two step instruction type jobs, not complicated or multi-step" with "a well-set, defined route which would require only minimal occupational changes in job duties." (R. at 270.) This is different from a situation where the hypothetical posed to the vocational expert did not properly take into account the claimant's mental limitations. See Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (hypothetical referring only to "simple repetitive one, two-step tasks" improper where it did not incorporate other specific medical findings of mental and intellectual limitations). ALJ Shellhammer's hypothetical corresponded with the State

---

[1] At the hearing, Claimant's attorney asked the vocational expert to assume that a moderate limitation, as indicated on the form, was equivalent to a 20% limitation in the particular area at issue. For example, he asked the vocational expert whether a person who was unable to sustain an ordinary routine without special supervision 20% of the time would able to perform bench-type packing jobs. (R. at 279.) He similarly asked about the ability of a person to perform such work with a 20% reduction in the ability to complete a normal workday, respond appropriately to changes in the work setting, and to perform at a consistent pace without an unreasonable number of rest periods. (R. at 281.) This interpretation of "moderate limitation" to equal a 20% reduction in ability and the use of the check-off boxes in this way prompted a lengthy discussion between ALJ Shellhammer and Claimant's attorney about the proper use and interpretation of the forms. (R. at 282-91.)

**14**

agency psychologists' opinions that Claimant could concentrate and carry out simple instructions but had difficulty abstracting and using judgment. (R. at 138.) As such, the hypothetical sufficiently captured Claimant's mental limitations and the ALJ was entitled to rely on the vocational expert's answer in forming his conclusions.

Similarly, the Court disagrees with Claimant's position that the ALJ did not properly account for her difficulties in responding to stress in the workplace, as required by Social Security Ruling 85-15. The State agency psychologists concluded that Claimant "can respond to criticism and adapt to change." (R. at 138.) The ALJ properly included this opinion in his RFC determination. (R. at 25, 27.) The ALJ incorporated Claimant's ability to deal with stress in the limitations he added onto her RFC calculation when he limited her RFC to work "within well-set defined routines and minimal occupational changes." (R. at 25.) These limitations based on stress in the workplace were included in the hypothetical posed to the VE. (R. at 270.)

In sum, the ALJ's evaluation of the evidence of Claimant's mental impairments was thorough and appropriate, and the Court concludes it was supported by substantial evidence.

## IV.   CONCLUSION

Because ALJ Shellhammer's decision is supported by substantial evidence in the record, this Court affirms his decision that Troche is not disabled and not entitled to SSI benefits.


Dated   3-19-2008                           /s/ Robert B. Kugler
                                            ROBERT B. KUGLER
                                            United States District Judge